<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                              :
HENRY ELOZUA, et al.,         :
                              :    CIVIL ACTION NO. 04-2029 (MLC)
      Plaintiffs,             :
                              :    MEMORANDUM OPINION
      v.                      :
                              :
STATE OF NEW JERSEY, et al.,  :
                              :
      Defendants.             :
                              :
```

<u>**COOPER, District Judge**</u>

The defendants State of New Jersey, New Jersey State Police ("NJSP"), Lt. Colonel Frederick Madden ("Madden"), New Jersey Office of the Attorney General ("NJAG"), Deborah Poritz ("Poritz"), Peter Verniero ("Verniero"), Peter Harvey ("Harvey"), and New Jersey State Troopers R. Lasso ("Lasso"), J. Butrymowicz ("Butrymowicz"), H. Iwanowski ("Iwanowski"), and Liddy ("the Trooper Defendants") (collectively, "the State Defendants"), move to dismiss the claims in the amended complaint, insofar as asserted against them, filed by the plaintiffs, Henry Elozua ("Elozua"), Ignacio Vergara ("Vergara"), and Manuel Morell ("Morell") (collectively, "the plaintiffs"), with the exception of the claims asserted against the Trooper Defendants under 42 U.S.C. § ("Section") 1983 in their individual capacities for alleged violations of the (1) Fourth Amendment, and (2) Fourteenth Amendment, for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil

Procedure ("Rule") 12(b)(6).  (Dkt. entry no. 33.)  The defendants Warren County Prosecutor's Office ("WCPO") and Warren County Prosecutors, Richard Hare ("Hare"), John O'Reilly ("O'Reilly"), and John Laky ("Laky") (collectively, "the County Defendants") move separately to dismiss the amended complaint, insofar as asserted against them, for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6). (Dkt. entry no. 34.)  The Court, for the reasons stated herein, will grant the motions.

## BACKGROUND

Elozua, a Hispanic male, was driving a vehicle on New Jersey Interstate Route 80 on March 23, 1991.  (Amended Compl., at ¶ 6.) Monell was a passenger in this vehicle.  (Id.)  Elozua's vehicle was stopped by the Trooper Defendants, who searched the vehicle and apparently found illegal narcotics.  (Id.)  Elozua and Monell were arrested and eventually convicted, sentenced, and incarcerated to serve a term of 20 years (with seven years mandatory without parole) and 15 years (with five years mandatory without parole), respectively, in New Jersey State Prison.  (Id. at ¶¶ 6-9.)[1]

Vergara, a Hispanic male, was also driving a vehicle on Route 80 on March 23, 1991.  (Id. at ¶ 11.)  Vergara was stopped

---

[1] After Elozua's release from prison, he was detained by the Immigration and Naturalization Service ("INS").  (Id. at ¶ 7.)

by Lasso, who was assisted by the other Trooper Defendants.
(Id.)  Vergara was found to be in possession of illegal narcotics
and was arrested.  (Id.)  Vergara was convicted, sentenced, and
incarcerated to serve a term of twenty years (with seven years
mandatory to be served without parole) in New Jersey State
Prison.  (Id. at ¶ 12.)[2]

The Honorable Walter R. Barisonek, J.S.C., upon motion by
the State of New Jersey, entered an order on May 3, 2002,
vacating Elozua's conviction and dismissing the indictment
against him.  (Dkt. entry no. 33, 4-20-06 Aff. of Tamara L. Rudow
("Rudow Aff."), at ¶ 3 & Ex. 1, 5-3-02 Ord. Vacating Conviction
and Dismissing Indictment in State of N.J. v. Elozua; Amended
Compl., at ¶ 8.)  The Honorable John Pursel, J.S.C., upon motion
by the State of New Jersey, entered an order on October 20, 2003,
vacating the convictions and dismissing the indictments against
Morell and Vergara.  (Rudow Aff., at ¶ 3 & Ex. 2, 10-20-03 Ord.
Vacating Conviction and Dismissing Indictment in State of N.J. v.
Vergara & Morell; Amended Compl., at ¶¶ 10, 13.)  The State, in
moving for this relief as to the plaintiffs and other criminal
defendants, stated that "one could argue and a conclusion could
be drawn by the Court that colorable issues of racial profiling"
existed.  (Rudow Aff., at ¶ 3 & Ex. 3, Aff. of Paul H. Heinzel in

_____

[2] After Vergara's release from prison, he was detained by
the Immigration and Naturalization Service.  (Id. at ¶ 12.)

Support of Motion to Vacate Conviction in <u>State of N.J. v. Elozua</u> ("Heinzel Aff I."), at ¶ 4.)  The State moved to vacate the convictions and dismiss the indictments against the criminal defendants in those cases "[r]ather than litigating the issues of selective enforcement, whether generally or specifically, in the interests of justice."  (Heinzel Aff. I, at ¶ 5.)

The plaintiffs brought this action in April 2004, claiming that the State's discriminatory enforcement of the traffic laws, and their subsequent arrests and convictions, violated their rights under the United States Constitution and New Jersey common law.  (<u>Id.</u> at ¶ 1.)  Specifically, the plaintiffs assert claims under 42 U.S.C. § 1983 for violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments.  (<u>Id.</u> at ¶¶ 1, 28-30.)  The plaintiffs also bring supplemental state law claims for assault and "gross negligence/reckless behavior."  (<u>Id.</u> at ¶¶ 31-53.) The complaint asserts claims against the Trooper Defendants, Madden, Poritz, Verniero, Harvey, Hare, O'Reilly, and Laky, in their individual and official capacities.  (<u>Id.</u> at ¶¶ 17-21.) The plaintiffs seek compensatory damages, punitive damages, and attorney's fees.

The plaintiffs filed an amended complaint on October 15, 2004.  (Dkt. entry no. 2.)  The County Defendants and State Defendants originally moved to dismiss the amended complaint on June 27, 2005, and September 8, 2005, respectively.  (Dkt. entry

4

nos. 15, 21.)  The Trooper Defendants answered the amended
complaint on September 8, 2005.  (Dkt. entry no. 22.)  The Court,
by order entered on November 15, 2005, denied the motions to
dismiss and stayed the action pending the resolution of the
Petition for a Writ of Certiorari in <u>Gibson v. State of New
Jersey</u>.  (Dkt. entry no. 27.)  The United States Supreme Court
denied the petition on March 20, 2006, and the Court extinguished
the stay and directed the plaintiff to proceed with prosecution
of the action on April 6, 2006.  (Dkt. entry no. 28, 3-27-06 St.
Defs. Ltr.; Dkt. entry no. 29, 3-29-06 County Defs. Ltr.; Dkt.
entry no. 31.)  The State Defendants and County Defendants filed
the current motions to dismiss the amended complaint on April 20,
2006, and April 25, 2006, respectively.  (Dkt. entry nos. 33,
34.)  The Court heard oral argument from the parties on these
motions on August 2, 2006.  (Dkt. entry no. 40.)

**<u>DISCUSSION</u>**

**I.    Standard Of Review For A 12(b)(6) Motion**

A complaint may be dismissed for "failure to state a claim
upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  On a
motion to dismiss, the Court must accept as true all of the
factual allegations in the complaint, and draw all reasonable
inferences in favor of the plaintiff.  <u>Doe v. Delie</u>, 257 F.3d
309, 313 (3d Cir. 2001).  But a court need not credit a
complaint's "bald assertions" or "legal conclusions" when

5

deciding a motion to dismiss.  <u>In re Burlington Coat Factory Sec.</u>
<u>Litig.</u>, 114 F.3d 1410, 1429-30 (3d Cir. 1997) (citation omitted).
"Dismissal of claims under Rule 12(b)(6) is appropriate only if
it appears beyond doubt that the plaintiff can prove no set of
facts in support of [the] claim upon which relief may be granted."
<u>Jakomas v. McFalls</u>, 229 F.Supp.2d 412, 419 (W.D. Pa. 2002).

The Court, when considering a motion to dismiss, may
generally not "consider matters extraneous to the pleadings."  <u>In</u>
<u>re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d at 1426.
However, if the Court exercises discretion and permits a party to
present matters outside the pleadings, the Court must (1) convert
the motion to dismiss into one for summary judgment, and (2)
allow the parties a reasonable opportunity to present all
material pertinent to such a motion under Rule 56.  Fed.R.Civ.P.
12(b).  An exception to this general rule is that the Court may
consider (1) exhibits attached to the complaint, (2) matters of
public record, and (3) all documents that are integral to or
explicitly relied upon in the complaint without converting the
motion to dismiss into one for summary judgment.  <u>Angstadt v.</u>
<u>Midd-West Sch. Dist.</u>, 377 F.3d 338, 342 (3d Cir. 2004) (citation
omitted).[3]

---

[3] "The rationale underlying this exception is that the
primary problem raised by considering documents outside the
complaint — lack of notice to the plaintiff — is dissipated where
the plaintiff has actual notice and has relied upon the documents
in framing the complaint."  <u>Jones v. Intelli-Check, Inc.</u>, 274
F.Supp.2d 615, 625-26 (D.N.J. 2003) (citations omitted).

The defendants, in moving to dismiss under Rule 12(b)(6), include an April 20, 2006 Affidavit from Tamara L. Rudow, with the following exhibits: (1) Order of the Honorable Walter R. Barisonek, J.S.C., dated May 3, 2002, Vacating Conviction and Dismissing Indictment in State of New Jersey v. Elozua; (2) Order of the Honorable John H. Pursel, J.S.C., Vacating Conviction and Dismissing Indictment in State of New Jersey v. Vergara & Morell; (3) Affidavit of Deputy Attorney General Paul Heinzel in Support of Motion to Vacate Conviction in State of New Jersey v. Elozua; and (4) Affidavit of Deputy Attorney General Paul Heinzel in Support of Motion to Vacate Conviction in State of New Jersey v. Vergara & Monell.  (Rudow Aff.)  The Court will consider the documents provided by the defendants as they are either relied upon in the amended complaint or matters of public record.[4]

The defendants also request that the Court take judicial notice of the following: (1) Harvey was the Attorney General of New Jersey from June 16, 2003, through January 18, 2006; (2) Verniero was the Attorney General of New Jersey from 1996 to

---

[4] The plaintiffs attached copies of these documents in their opposition brief to the County Defendants' first motion to dismiss, filed on September 23, 2005.  (Dkt. entry no. 24.)  The plaintiffs also submitted a copy of Roberts v. Harvey, 151 Fed.Appx. 120 (3d Cir. 2005) with their opposition to the County Defendants' current motion to dismiss.  (Dkt. entry no. 35.)  In responding to the County Defendants' motion, the plaintiffs appear to incorporate and rely upon their opposition brief filed in September 2005.  (See Dkt. entry no. 35, Pls. Ltr. Opp. Br., at 1 (stating choice to "submit[] this letter in lieu of [a] more formal amended brief") (emphasis added).)

1999; (3) Poritz was the Attorney General of New Jersey from 1994 to 1996; and (4) Madden served as acting Superintendent of the NJSP from February 1, 2002 through March 7, 2002, and from October 18, 2002, through February 27, 2003.  (Defs. Br., at 6-7.)  As the terms of the offices and positions held by Harvey, Verniero, Poritz, and Madden are matters of public record, the Court will consider them for purposes of this motion.

The Court notes that the plaintiffs have failed to oppose the State Defendants' motion.  The Court, however, must address an unopposed motion to dismiss a complaint on the merits. Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991); see Marcial v. Rawl, No. 94-6709, 1995 WL 31614, at *2 n.1 (E.D. Pa. Jan. 25, 1995) (stating under Stackhouse "that a motion to dismiss is unopposed does not allow [a court] to fail to consider whether the complaint sets forth a viable cause of action").  The Court will quote the amended complaint often, as its allegations must be accepted as true.  See Bartholomew v. Fischl, 782 F.2d 1148, 1152 (3d Cir. 1986).

## II.  Claims Against The State Defendants

The State Defendants move to dismiss on five grounds.  They argue that the (1) claims for monetary damages against them in their official capacities are barred by the Eleventh Amendment; (2) Section 1983 claims against them in their official capacities must fail because they are not "persons" within the meaning of

8

the statute; (3) federal claims against Harvey, Verniero, Poritz, Madden, and the Trooper Defendants are impermissibly based on a theory of respondeat superior; (4) state law tort claims must be dismissed for failure to comply with the notice requirements of the New Jersey Tort Claims Act ("NJTCA"); and (5) state law tort claims, insofar as asserted against Harvey, Verniero, Poritz, and Madden, must be dismissed because they were not in their respective offices on the date of the alleged racial profiling. (St. Defs. Br., at 17-18.)

### A. Federal Claims Against The State Defendants In Their Official Capacities

The State Defendants argue that (1) the Eleventh Amendment bars the claims for money damages against them, and (2) they are not subject to suit under Section 1983 because they are not "persons" within the meaning of the statute.  However, the Court need not address these contentions because the plaintiffs concede that their claims for damages and their Section 1983 claims against the State Defendants in their official capacities must be dismissed.  (Dkt. entry no. 33, Minute Entry for 8-2-06 Hearing.)

### B. Federal Claims Against Harvey, Verniero, Poritz, Madden, And The Trooper Defendants In Their Individual Capacities

The State Defendants also claim that the federal claims against Harvey, Verniero, Poritz, Madden, and the Trooper Defendants must be dismissed because they are based solely on a theory of respondeat superior.  (St. Defs. Br., at 13-15.)  The

9

state defendants assert that the plaintiffs have "failed to allege any personal involvement on the part of . . . Harvey, Verniero, and Poritz in the violation of their constitutional rights." (Id. at 14.)  The state defendants claim that "[o]ther than in the Caption, [Harvey, Verniero, and Poritz] are not named anywhere in the body of the Amended Complaint." (Id.)  Further, state defendants point out that the amended complaint states that "Defendants [NJSP, Madden, Attorneys General, and NJAG] are liable for the unlawful acts and practices of [the Trooper Defendants] under the doctrine of respondeat superior." (Amended Compl., at ¶ 24.)  Finally, the state defendants indicate that neither Harvey, Verniero, Poritz, nor Madden held their respective offices on the date of the alleged unlawful racial profiling. (St. Defs. Br., at 14-15.)

A supervisory official acting under color of state law "may only be sued in his individual capacity under [Sections] 1981 and 1983 where the individual defendant is 'personally involved in the alleged wrongs.'" Longoria v. New Jersey, 168 F.Supp.2d 308, 317 (D.N.J. 2001) (quoting Santiago v. City of Vineland, 107 F.Supp.2d 512, 540 (D.N.J. 2000)).  Thus, supervisory liability under Section 1983 "cannot be predicated solely upon a theory of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  A plaintiff, to properly assert a supervisor's "personal involvement" must allege with "appropriate

particularity" that the supervisor (1) personally directed the allegedly unconstitutional conduct, or (2) had actual knowledge and acquiesced in the conduct.  <u>Id.</u>  As such, a plaintiff's mere allegations that a supervisory official was "responsible for supervising" the other defendants is insufficient to state a claim for supervisory liability under Section 1983.  <u>Id.</u> at 1208.

The amended complaint alleges that the plaintiffs raised the issue of racial profiling in their (1) initial defense of the case; (2) briefs supporting motions to suppress; (3) application for reconsideration of those motions; (4) subsequent appeals from their convictions to the New Jersey appellate division; (5) petition for certification to the New Jersey Supreme Court; and (6) in a writ of habeas corpus to federal court.  (Amended Compl., at ¶ 14.)  The amended complaint also states that the State of New Jersey, NJAG, "Attorneys General," NJSP, and Superintendent of the NJSP, along with the county defendants,

> either individually or acting collectively through
> conspiracy, agreement or tacit understanding, vigorously
> denied the existence and/or implementation of any such
> practice or procedure both publicly and in court
> documents, and, through the use of the perjured testimony
> of [the Trooper Defendants], succeeded in achieving their
> goal of implementing and continuing the wrongful and
> unlawful incarceration of the plaintiffs.

(<u>Id.</u>)

> The plaintiffs also allege that Madden

> is or was responsible, at all times material herein, for
> the policies, practices and/or customs of the [NJSP] from
> on or about March 23, 1991 through and including those

11

periods of time pursuant to which racial profiling of
people of color, including Hispanics and Afro-Americans
was practiced routinely by the [NJSP] and/[]or other law
enforcement agencies whose employees form a part of or
assisted with the work of the [NJSP].  [He] was also
responsible for [(1)] supervising the other officers in
the administration of the policies and practices of the
state police[, (2)] formulating the practice of racial
profiling or in allowing it to continue[, and (3)]
formulating training practices and procedures which
ensured that the practice of racial profiling was well
engendered in the ranks of the [NJSP].

(Id. at ¶ 21.)  The plaintiffs also assert that the NJSP, Madden,

"Attorneys General," and NJAG, are "liable for the unlawful acts

and practice of [the Trooper Defendants] under the doctrine of

respondeat superior."  (Id. at ¶ 24.)

The plaintiffs, to the extent that they have alleged that

the individual state defendants should be held liable under

Section 1983 pursuant to a theory of respondeat superior, cannot

maintain such claims.  As to claims against Madden in his

individual capacity, he was only the acting Superintendent of the

NJSP from February 1, 2002 through March 7, 2002, and from

October 18, 2002, through February 27, 2003.  (St. Defs. Br., at

6-7.)[5]  Although the Court, in deciding a Rule 12(b)(6) motion to

_____

[5]  See White v. Williams, 179 F.Supp.2d 405, 410 (D.N.J.
2002) (stating "Col. Carl A. Williams . . . was the
Superintendent of the State Police between March 1994 and
February 1999. . . .  Williams' predecessor was . . . Col.
Clinton Pagano, who was the Superintendent from October 1975
until February 1990 . . . .  Williams was replaced by . . . Col.
Michael Fedorko, who served as Acting Superintendent between
February 1999 and November 1999"); see also
http://www.state.nj.us/njsp/about/70s.html (stating that "[o]n
October 24, 1975, Colonel Clinton L. Pagano was sworn into office

dismiss, must accept the allegations in the amended complaint as true, Madden's term of service directly contradicts the plaintiffs' claims that he was responsible for the periods of racial profiling (including March 1991).  The only apparent correlation is that Madden was the "acting Superintendent" at the times that the plaintiffs' convictions were vacated and indictments dismissed.  This is, in itself, insufficient to establish personal involvement by Madden to maintain a claim against him under Section 1983.

The plaintiffs have also failed to allege personal involvement by Verniero, Harvey, and Poritz to sustain claims against them in their individual capacities.  Although the plaintiffs allege that the "Attorneys General" (1) "vigorously denied the existence and/or implementation" of racial profiling, and (2) "succeeded in their goal of implementing and continuing the wrongful and unlawful incarceration of the plaintiffs," the allegations appear to be limited to actions commencing from the arrests of the plaintiffs through the denial of a writ of habeas corpus.  (Amended Compl., at ¶ 14.)  None of the named former

---

as the ninth Superintendent of the State Police); http://www.state.nj.us/njsp/about/90s.html ("The 1990's began with the appointment of Colonel Justin J. Dintino as the tenth Superintendent of the New Jersey State Police."); see id. ("On June 9, 1994, Colonel Carl A. Williams was sworn in as the 11th Superintendent of the New Jersey State Police.")

Attorney Generals of New Jersey were in office during this time. Moreover, the allegations against Verniero, Harvey, and Poritz are not similar to the allegations in the complaint filed in White v. Williams, 179 F.Supp.2d 405 (D.N.J. 2002).  In White, the plaintiffs, who were arrested between 1997 and 1999, claimed that Verniero concealed (1) "the existence of racial profiling until April 1999, despite learning of its existence shortly after he became the Attorney General," and (2) information relating to racial profiling from (a) the state appellate court in the appeal in State v. Soto, 734 A.2d 350 (N.J. Law Div. 1996), and (b) the Department of Justice after it began its profiling investigation in 1997.  179 F.Supp.2d at 419.  The White plaintiffs also asserted that Verniero's "inaction allowed racial profiling to continue, when he should have used his knowledge and authority to rectify the problem." Id.  Here, the plaintiffs have not sufficiently alleged personal involvement by Verniero, Harvey, or Poritz, even under the liberal pleading standards of Rule 8(a)(2), to support claims against these defendants in their individual capacities.

## C.   The Remaining Federal Claims

The plaintiffs, in the introductory section of the amended complaint (discussing jurisdiction), allege violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments.  (Amended Compl., at ¶ 1.)  Although these amendments are mentioned in the first paragraph of the amended complaint, the remainder of the

14

amended complaint fails to assert how the allegedly wrongful conduct of the State Defendants violates the Fifth and Eighth Amendments.  Therefore, the Court will dismiss the amended complaint insofar as it asserts claims under the Fifth and Eighth Amendments.

### 1.   Fifth Amendment

The Fifth Amendment provides, inter alia, that no person "shall be deprived of life, liberty, or property without due process of law." Id.  However, the rights provided by the Fifth Amendment do not apply to the actions of state officials; rather, "[t]he limitations of the Fifth Amendment restrict only federal governmental action." Nguyen v. U.S. Cath. Conf., 710 F.2d 52, 54 (3d Cir. 1983).  Therefore, the plaintiffs cannot maintain Fifth Amendment claims.[6]

### 2.   Eighth Amendment

The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.  The plaintiffs allege only that they were arrested, convicted, and incarcerated. (Amended Compl., at ¶¶ 7, 9, & 12.)  The plaintiffs have not supported their Eighth Amendment claims with any allegations as

---

[6] If the plaintiffs are asserting violations of their Fifth Amendment rights against self-incrimination, such claims are not discernable from the amended complaint.  Further, to the extent that the plaintiffs assert equal protection violations, such claims are properly analyzed under the Fourteenth Amendment.

to any possible "cruel and unusual punishments" inflicted while in prison. The plaintiffs also have not alleged that they were "depriv[ed of] the minimal civilized measure of life's necessities" while in prison. Hudson v. McMillan, 503 U.S. 1, 8-9 (1992). Furthermore,

> [t]o the extent Plaintiff seeks damages for his post-conviction incarceration, the Eighth Amendment provides no basis for relief. The Eighth Amendment does not provide a cause of action for every criminal defendant whose conviction and sentence have been invalidated on appeal. Rather, the Eighth Amendment serves to protect prisoners, entrusted to the custody of the State, from abuse by their jailers.

Lane v. Whitman, No. 02-4290 (JCL), slip op., at 12 (Feb. 20, 2004). The plaintiffs fail to allege any violations of the conditions of their confinement, or the treatment they received while in prison. Also, the plaintiffs have not asserted that any of the named defendants had any control over their conditions of confinement after they were sentenced. Accordingly, the allegations do not support a cognizable Eighth Amendment violation.

### D.   The New Jersey Common Law Tort Claims

The State Defendants contend that the New Jersey common law tort claims for assault and gross negligence/reckless behavior, must be dismissed because the plaintiffs failed to "comply with the mandatory notice requirements of the [NJTCA]." (St. Defs. Br., at 14-17.) The Court finds that these claims are barred by the provisions of the NJTCA.

16

The NJTCA states that "[n]o action shall be brought against a public entity or public employee under [the NJTCA] unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this Chapter." N.J.S.A. § 59:8-3.  Chapter 8 of the NJTCA requires a claimant to file a Notice of Claim to allow the public entity to investigate the merits of the claim.  Id. at § 59:8-4.  This notice must be signed and filed with the public entity within 90 days of the accrual of the cause of action.  Id. at § 59:8-8.  The claimant bears the burden of proving that the claim was filed with the appropriate public entity.  Rolax v. Whitman, 175 F.Supp.2d 720, 730 (D.N.J. 2001).

The alleged tortious acts all occurred on or around March 23, 1991.  (Amended Compl., at 3-4.)  Because the plaintiffs' claims are against public entities and employees of the State of New Jersey, they were required to file a Notice of Claim with each party within 90 days of the wrongful conduct.[7]  The plaintiffs have failed to allege that they filed the required notices at all, much less within the allotted time period. Accordingly, the common law torts alleged in the amended complaint are barred by the NJTCA.

---

[7] The Court notes that the plaintiffs, in failing to file any Notice of Claim, also failed to file such notice within 90 days after their convictions were vacated and indictments dismissed.

17

### III. Claims Against The County Defendants

The county defendants move to dismiss on four grounds.  They argue that (1) they are entitled to absolute immunity from the Section 1983 claims, (2) they are entitled to qualified immunity because they did not violate any clearly established constitutional right of the plaintiffs, (3) they are entitled to prosecutorial immunity under N.J.S.A. § 59:3-8, and (4) the plaintiffs have failed to allege an independent wrong to support a viable civil conspiracy claim.  (County Defs. Br., at 6-20.)

### A.   Federal Claims Against WCPO & the County Prosecutor Defendants in Their Official Capacities

The plaintiffs' Section 1983 claims and claims for monetary damages against the County Defendants in their official capacities are barred by the Eleventh Amendment.  See Baker v. Brown, No. 04-37, 2006 WL 1098481, at *6-*7 (D.N.J. Mar. 31, 2006) (concluding Section 1983 claims against county prosecutor barred by Eleventh Amendment as county prosecutor's function related to work under supervision of Attorney General and, thus, functioned as "arm of the state").[8]

### B.   Federal Claims Against the County Prosecutor Defendants in Their Individual Capacities

The County Defendants argue that they are entitled to absolute immunity from the plaintiffs' federal claims because all

---

[8] The amended complaint asserts, inter alia, that the WCPO is "an Agency of the . . . STATE OF NEW JERSEY."  (Amended Compl., at ¶ 26.)

18

of the allegations relate to their conduct, which was "quasi-judicial" in nature.  (County Defs. Br., at 9.)  The plaintiffs contend that the County Defendants are properly named defendants because they concealed and fostered the existence of racial profiling.  (Pls. 9-23-05 Opp. Br., at 4-5.)  The Court finds that the County Defendants are entitled to absolute immunity.

A prosecutor is entitled to absolute immunity from liability under Section 1983 for the performance of judicial or quasi-judicial functions.  McArdle v. Tronetti, 961 F.2d 1083, 1084-85 (3d Cir. 1992).  A prosecutor functioning in an investigatory or administrative role, however, is only entitled to qualified immunity.  Schrob v. Catterson, 948 F.2d 1402, 1414 (3d Cir. 1991).

The Court applies a "functional approach" in considering whether a prosecutor's conduct is shielded by absolute immunity or qualified immunity.  Id.  This approach "looks to the nature of the function performed, not the identity of the actor who performed it."  Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993) (citation and quotations omitted).  The prosecutor's motive, including personal animus, is irrelevant to this analysis.  Kulwicki v. Dawson, 969 F.2d 1454, 1464 (3d Cir. 1992).

A prosecutor, under the functional approach, is immune from liability under Section 1983 when functioning as an "advocate for the State."  Imbler v. Pachtman, 424 U.S. 409, 430-31 n.33 (1976).  Absolute immunity, therefore, shields a prosecutor's

19

conduct that is "intimately associated with the judicial phase of the criminal process." Id. at 430.  This absolute immunity extends to a prosecutor's conduct associated with "initiating a prosecution and presenting the State's case." Id. at 431.

Prosecutors also are absolutely immune from a civil suit for damages under Section 1983 for:

> (1) instituting grand jury proceedings without proper investigation and without a good faith belief that any wrongdoing occurred, (2) initiating a prosecution without a good faith belief that any wrongdoing has occurred, (3) soliciting false testimony from witnesses in grand jury proceedings, probable cause hearings, and trials, and (4) the knowing use of perjured testimony in a judicial proceeding.  Thus, a prosecutor is absolutely immune when making a decision to prosecute, "even where he acts without a good faith belief that a wrongdoing has occurred."

Middleton v. Farley, No. 06-502, 2006 WL 1798433, at *5 (D.N.J. June 28, 2006) (internal citations omitted).  This immunity offers broad protection for prosecutors, even if they acted willfully, maliciously, or in bad faith.  Imbler, 424 U.S. at 419 n.3.

The plaintiffs have failed to assert any conduct beyond what is "intimately associated with the judicial phase of the criminal process." Buckley, 509 U.S. at 273; see, e.g., Gibson v. Superintendent of N.J. Dep't of L. & Pub. Safety-Div. of St. Pol., 411 F.3d 427, 444 (3d Cir. 2005) (noting that "the actual prosecutors in [plaintiff's] case are not named as defendants, and would have been immune if they had been so named").  Thus,

the claims against the County Defendants in their individual capacities must be dismissed.[9]

## C.   Prosecutorial Immunity Under the NJTCA

The county defendants contend that they are entitled to prosecutorial immunity against the plaintiffs' tort claims under the NJTCA.  (County Defs. Br., at 18-19.)  The Court need not address this issue, however, because the Court has already determined that the plaintiffs failed to comply with the notice provisions of the NJTCA.  Accordingly, the New Jersey common law torts alleged in the amended complaint, to the extent they are alleged against the County Defendants, are barred by the NJTCA.

## CONCLUSION

The plaintiffs cannot maintain their Section 1983 claims against the State of New Jersey, NJSP, Madden, NJAG, Poritz, Verniero, Harvey, and the Trooper Defendants in their official capacities, because they are not "persons" under the statute. The plaintiffs also cannot sustain their federal claims against Poritz, Verniero, Harvey, Madden, or the Trooper Defendants insofar as the claims are asserted against them under the doctrine of respondeat superior.  The plaintiffs also have failed to allege personal involvement by Madden, Poritz, Verniero, and Harvey, to maintain Section 1983 claims against them in their

---

[9] As the Court has determined that the County Defendants are entitled to absolute immunity, the Court need not examine whether they are entitled to qualified immunity.

individual capacities.  The Court further finds that the amended complaint fails to assert a cause of action under Section 1983 for violations of the Fifth and Eighth Amendments.

To the extent that the plaintiffs have asserted New Jersey common law claims of assault and gross negligence/recklessness, those claims are barred against the State Defendants and the County Defendants because they failed to comply with the notice requirements of the NJTCA.  The Court also finds that the plaintiffs' federal claims against the County Defendants in their official capacities are barred by the Eleventh Amendment. Moreover, the federal claims against the County Defendants in their individual capacities are barred by the doctrine of absolute immunity.  Accordingly, the Court grants (1) the State Defendants' motion to dismiss, and (2) the County Defendants' motion to dismiss.  The Court will issue an appropriate order and judgment.

    s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge